# Illinois Official Reports

## Supreme Court

***People v. Hardman*, 2017 IL 121453**

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. ANTOINE HARDMAN, Appellant. |
| Docket No. | 121453 |
| Filed | November 30, 2017 |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Vincent M. Gaughan, Judge, presiding. |
| Judgment | Appellate court judgment affirmed; cause remanded. |
| Counsel on Appeal | Michael J. Pelletier, State Appellate Defender, Patricia Mysza, Deputy Defender, and Tonya Joy Reedy, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago, for appellant. |
| | Lisa Madigan, Attorney General, of Springfield (David L. Franklin, Solicitor General, and Michael M. Glick and Garson Fischer, Assistant Attorneys General, of Chicago, of counsel), for the People. |
| Justices | JUSTICE GARMAN delivered the judgment of the court, with opinion. |
| | Chief Justice Karmeier and Justices Freeman, Thomas, Kilbride, Burke, and Theis concurred in the judgment and opinion. |

¶ 1    Following a bench trial, defendant, Antoine Hardman, was convicted of one count of possessing between 1 and 15 grams of heroin with intent to deliver within 1000 feet of a school. See 720 ILCS 570/401(c)(1), 407(b)(1) (West 2012). At a sentencing hearing, the Cook County trial court imposed a public defender fee of $500. See 725 ILCS 5/113-3.1(a) (West 2012). Hardman appealed, arguing that the State failed to prove that he committed the offense within 1000 feet of a school, that the public defender fee was imposed without a proper hearing, and that the mittimus should be amended to reflect the correct name of the offense. The appellate court affirmed Hardman's conviction and sentence, vacated the public defender fee, remanded for a new hearing on whether the public defender fee was appropriate, and amended the mittimus. 2016 IL App (1st) 140913-U. We allowed Hardman's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Mar. 15, 2016).

¶ 2                                   BACKGROUND

¶ 3    With respect to Hardman's conviction, Hardman only challenges whether the evidence established that the building at issue was a school. See 720 ILCS 570/407(b)(1) (West 2012). For that reason, we confine the factual background to the evidence presented about the building purported to be a school, 646 North Lawndale Avenue.

¶ 4    The State charged Hardman with one count of possessing between 1 and 15 grams of heroin with intent to deliver within 1000 feet of "any school *** to wit: Ryerson Elementary School," a Class X offense. See 720 ILCS 570/401(c)(1), 407(b)(1) (West 2012). At Hardman's arraignment, the court appointed a public defender, and the State filed a motion for reimbursement for the cost of the public defender. See 725 ILCS 5/113-3.1(a) (West 2012).

¶ 5    Before trial, the State sought leave to amend the information. The information referred to "Ryerson Elementary School," but in pictures taken in the winter of 2014, a sign in front of the school listed the name as "Laura Ward." The State indicated that, on July 22, 2013, at the time of the offense, it believed that the building was called Ryerson Elementary School. However, when the court asked for the date of the school name change, the State responded that it believed that it was "this school year" that the name changed to Laura Ward. The State asserted that the school year "should have started in September." The court denied the State's motion to amend the information, finding that the State could explain the school name discrepancy at trial.

¶ 6    At trial, three witnesses testified about the location of the drug transactions. Officer Harmon of the Chicago police department testified that, on the date of the offense, he was on duty from 7 a.m. until 4 p.m. as an enforcement officer. Officer Harmon assisted in detaining Hardman. The State questioned Officer Harmon as to his familiarity with the area:

"Q. Now, how long had you worked in the 11th District on the date of this incident?

A. Well, I'd been in the 11th District nine years.

Q. In your nine years in the 11th District were you familiar with this area where the arrest occurred?

A. Yes.

Q. Are you familiar with the schools near this address?

A. I am.

Q. What school is there?

A. Laura Ward School.

Q. Is that what it is currently called?

A. Yes. It changed.

Q. What was the name of the school back on July 22, 2013?

A. Ryerson."

¶ 7    Officer Ruggiero, a Chicago police officer, testified that at about 10 a.m. on July 22, 2013, he was conducting surveillance of the alley at 634 North Ridgeway Avenue. Officer Ruggiero assisted in detaining Hardman. Officer Ruggiero testified that, in July 2013, he was part of the "Area North Saturation Team," assigned to the eleventh district. Officer Ruggiero testified that he had been an officer in the eleventh district for seven years by that time. The State questioned Officer Ruggiero as to his familiarity with the area:

"Q. And were you in the vicinity of 634 Ridgeway in Chicago?

A. Yes.

Q. Is that area within the 11th District?

A. Yes.

Q. Can you please describe the six hundred block of North Ridgeway for the jurors?

A. Yes. The area is residential, with buildings and also right next to a school called Ryerson Elementary School at that time.

Q. You say at that time. Does that school have a different name?

A. Yes.

Q. What is that?

A. Laura Ward.

Q. Now, what is the closest intersection to the area we're referring to?

A. Huron and Ridgeway.

Q. Are you familiar with that location?

A. Yes.

Q. And how are you familiar with that location?

A. I've worked in that area, I was assigned to the 11th District. I've done numerous arrests in that area.

Q. Have you made narcotics related arrests in that area?

A. Yes.

Q. Approximately how many?

A. During a year, around that time of year, at least twenty.

Q. You indicated that you have done surveillance in that area before?

A. Yes.

Q. Approximately how many times?

A. At least twenty times in that part of the year."

¶ 8        On cross-examination, Officer Ruggiero acknowledged that, as a patrol officer, it was his responsibility to try to keep the streets safe in the area of Ridgeway Avenue. When asked whether the area within the vicinity of 634 North Ridgeway Avenue was residential, Officer Ruggiero responded, "Correct. Right across the street from Ryerson Elementary School." Officer Ruggiero was asked whether "[p]eople were coming and going, taking their kids to school, parents" and answered, "[f]airly active neighborhood. It is an active neighborhood."

¶ 9        Christopher Lappe, an investigator with the Cook County State's Attorney's office, testified that he measured the distance from 634 North Ridgeway Avenue to "646 North Lawndale. The Laura Ward Elementary School," and determined that the distance was 88 feet. Investigator Lappe testified that the end point for his measurement was "[t]he parking lot for the Laura Ward." Investigator Lappe also testified that the school was "formerly called Ryerson Elementary School."

¶ 10        Hardman was found guilty of possession of a controlled substance with intent to deliver within 1000 feet of a school, a Class X felony. 720 ILCS 570/401(c), 407(b)(1) (West 2012). At the sentencing hearing, the trial court sentenced Hardman to eight years in the Department of Corrections. The trial court admonished Hardman of his right to appeal and then asked the State whether it had any other motions. The State reminded the trial court of its motion for reimbursement of public defender fees. The following exchange occurred between the trial court and the assistant public defender:

> "THE COURT: Ms. Hull, how many times have you appeared on this case?
>
> HULL: Eight times, Judge.
>
> THE COURT: How many?
>
> HULL: Eight.
>
> THE COURT: Eight. All right. And you went to trial. All right. Attorney's fees would be appropriate of $500. Thank you."

¶ 11        On appeal, Hardman argued (1) that the State failed to prove beyond a reasonable doubt that the building at issue was operating as a school on the date of the offense because the evidence showed that the building was in flux or in transition around the time of the offense and (2) that the trial court erred in assessing the $500 public defender reimbursement fee without considering Hardman's ability to pay and, since "no hearing" was held within the statutory time limit on his ability to pay, that the fee should be vacated outright without remand. Although not relevant here, Hardman also sought to have the mittimus amended to reflect the correct name of the offense of which he was convicted.

¶ 12        The appellate court affirmed Hardman's conviction, concluding that the officers' testimony was sufficient for the trier of fact to conclude that the building located near the offense was a school. 2016 IL App (1st) 140913-U, ¶ 18. The appellate court agreed that the trial court erroneously assessed the $500 fee; however, it determined that the proper remedy was to remand the case to the trial court to hold a proper hearing to consider Hardman's ability to pay. *Id.* ¶ 23.

¶ 13                                                    ANALYSIS

¶ 14        Hardman asserts that the State failed to prove that he was guilty beyond a reasonable doubt of possession of a controlled substance with intent to deliver within 1000 feet of a school.

Specifically, Hardman acknowledges that he was proven guilty of the underlying possession of a controlled substance with intent to deliver charge. See 720 ILCS 570/401(c)(1) (West 2012). He disputes, however, that the State presented sufficient evidence to prove him guilty of the enhancement provision, which elevates the penalty where an underlying offense occurs within 1000 feet of the real property comprising a school. See 720 ILCS 570/407(b)(1) (West 2012).

¶ 15        Second, Hardman contends that, because the trial court imposed a public defender fee without first inquiring into his financial circumstances, in accordance with the requirements of section 113-3.1(a) of the Code of Criminal Procedure of 1963, "no hearing" took place. Thus, according to Hardman, the proper remedy is to vacate the fee outright instead of remanding for a proper hearing. We begin by addressing Hardman's argument that the State must demonstrate, for purposes of section 407(b)(1), that a building is an active or operational school on the date of the offense.

¶ 16                              "School" Locality Enhancement

¶ 17        Section 407(b)(1) of the Illinois Controlled Substances Act provides that the offense of delivery of a controlled substance is a Class X felony when committed within 1000 feet of the real property comprising any "school." 720 ILCS 570/407(b)(1) (West 2012). Hardman acknowledges that the State proved he possessed a controlled substance with intent to deliver. See 720 ILCS 570/401(c)(1) (West 2012). However, for purposes of proving the locality enhancement under section 407(b)(1), Hardman disputes that the evidence presented at trial established that the building at issue was a school.

¶ 18        To establish that an offense occurred within 1000 feet of a school, Hardman asserts that the State must prove beyond a reasonable doubt that the building at issue was an active or operational "school" at the time of the offense. To do so, according to Hardman, requires that the State present particularized evidence, based on a witness's personal knowledge of an enhancing location's actual use at the time of the offense. It is insufficient, for example, for the State to present testimony of a police officer who simply refers to a building as a "school." The State counters that Hardman is essentially asking this court to import an additional element into the statute—to require proof that the school be "active" or "operating" at the time of the offense.

¶ 19        Whether the statute requires the State to present particularized evidence of a building's use involves a question of statutory interpretation subject to *de novo* review. See *People v. Ward*, 215 Ill. 2d 317, 324 (2005) ("Defendant's sufficiency-of-the-evidence argument devolves into an issue of statutory interpretation[.]"). "The cardinal rule of statutory construction is to ascertain and give effect to the legislature's intent." *People v. Johnson*, 2017 IL 120310, ¶ 15. "The best indication of legislative intent is the statutory language, given its plain and ordinary meaning." *Hall v. Henn*, 208 Ill. 2d 325, 330 (2003).

¶ 20        No section of the Illinois Controlled Substances Act defines the term "school." 720 ILCS 570/101 *et seq.* (West 2012). However, the term has acquired a settled meaning through judicial construction and legislative acquiescence. See *People v. Young*, 2011 IL 111886 (relying on the Criminal Code of 1961 (720 ILCS 5/1-1 *et seq.* (West 2008))). Courts look to the definition of "school" contained within the Criminal Code of 2012 (Criminal Code), which provides that a school "means a public, private, or parochial elementary or secondary school,

community college, college, or university and includes the grounds of a school." 720 ILCS 5/2-19.5 (West 2012).

¶ 21    Hardman contends that this court's decision in *Young*, 2011 IL 111886, requires particularized evidence of the location's use to prove the enhancing location element. In *Young*, this court considered whether the term "school" contained in section 407(b)(2) (720 ILCS 570/407(b)(2) (West 2008)) encompassed preschools. *Young*, 2011 IL 111886, ¶ 1. There, the defendant challenged whether the State had provided sufficient evidence to prove that the offense occurred within 1000 feet of a school. *Id.* At trial, there was testimony that the offense occurred within 1000 feet of the " 'High Mountain Church and Preschool,' " but no other testimony was offered to describe the school or its attendees. *Id.* ¶ 5. In light of legislative acquiescence and the Criminal Code's definition of the term "school," this court concluded that the term did not encompass preschools. *Id.* ¶¶ 16-19. Hardman asserts that, "[g]iven this Court's conclusion that not every school or school building constitutes a 'school' under the enhancing statute, there must be additional evidence of what happens in the building, not just conclusory testimony that the building is a school."

¶ 22    Hardman maintains that, consistent with *Young*, several appellate court decisions have followed suit in requiring that particularized evidence be presented to establish that an offense occurred within a statutory enhancing location. We briefly highlight these cases, which involve other types of statutory locality enhancements.

¶ 23    At issue in *People v. Morgan* was whether the State had provided sufficient proof that Bedrosian Park was a "public park" for purposes of the Illinois Controlled Substances Act (720 ILCS 570/407(b)(1) (West 1996)). 301 Ill. App. 3d 1026, 1031 (1998). Although the Illinois Controlled Substances Act does not define "public park," the *Morgan* court noted that "public park" had been defined by the court in other contexts as "a piece of ground in a city or village set apart for ornament or to afford the benefit of air, exercise or amusement." (Internal quotation marks omitted.) *Id.* Hardman contends that, in *Morgan*, sufficient proof had been presented because police officer testimony demonstrated that, at the relevant time, the park grounds and its adjacent parking lot were open to and used by the public and that the grounds encompassed several enclosed spaces with recreational facilities. Also, the defendant had testified that he played basketball at the park on the day of the offense. *Id.* at 1032. Hardman cites *Morgan* approvingly and asserts that *Morgan* demonstrates that the particularized testimony, based on personal knowledge and observations of the area on the day in question, established that Bedrosian Park was a public park in fact and not merely in name.

¶ 24    In *People v. Fickes*, the appellate court held that, to support a charge for aggravated participation in methamphetamine trafficking, "the State must present evidence, from a witness or witnesses who are sufficiently familiar with the area in question, that supports a reasonable inference that the building in question was functioning primarily as a place of worship on the date of the offense." 2017 IL App (5th) 140300, ¶ 27. There, the defendant's conviction was reduced from aggravated participation in methamphetamine manufacturing to simple participation in methamphetamine manufacturing because the State failed to present sufficient evidence to show that the offense occurred within 1000 feet of St. James Lutheran Church. *Id.* The appellate court concluded that no reasonable jury could have inferred that the building was functioning primarily as a church on the date of the offense because, "[a]s a matter of both logic and common sense, there is no inherent rational connection between a

witness's mere use of the term 'church' at trial and the fact that the 'church' was or was not functioning primarily as a place of worship on a particular date prior to trial." *Id.* ¶ 24.

¶ 25     Hardman relies on other appellate cases involving churches. In *People v. Sparks*, the appellate court considered whether the State had demonstrated that the Salvation Army chapel was a church for purposes of section 407(b)(2) of the Illinois Controlled Substances Act (720 ILCS 570/407(b)(2) (West 2000)). 335 Ill. App. 3d 249, 251 (2002). The *Sparks* court noted that, in determining whether a building is a church, the "appropriate focus must be on the manner in which the place is used, *i.e.*, whether its primary use is for religious worship." *Id.* at 256. The *Sparks* court concluded that the State had established beyond a reasonable doubt that the chapel was a church, given the testimony of the chapel's minister, who testified that the chapel was used exclusively for religious services. *Id.* It did not matter that services were only held once a week, that the chapel was part of a larger building used for nonreligious purposes, or that the chapel lacked certain traditional physical characteristics of a church. *Id.* at 256-57.

¶ 26     In *People v. Ortiz*, the appellate court held that the State failed to prove beyond a reasonable doubt that, on the date of the offense, there was a church within 1000 feet of the site of the offense. 2012 IL App (2d) 101261, ¶ 13. Although an officer testified that he measured the distance from the drug transaction to the building at issue, he did not testify to the date on which he conducted the measurement. *Id.* ¶ 11. Also, no testimony was presented to establish when photographs of the building were taken or whether the photographs accurately represented the building as of the date of the offense. *Id.* For these reasons, the *Ortiz* court concluded that it had no way of knowing whether Emmanuel Baptist Church existed on the date of the offense. *Id.*

¶ 27     In *People v. Cadena*, the appellate court held that the evidence was insufficient to prove that Evangelical Covenant Church was an active church on the date that the defendant was arrested for purposes of section 407(b)(1) of the Illinois Controlled Substances Act (720 ILCS 570/407(b)(1) (West 2008)). 2013 IL App (2d) 120285, ¶ 1. The *Cadena* court noted that the State had provided even less evidence than it had in *Ortiz*. *Id.* ¶ 13. Although the building at issue was, by name, a church, the *Cadena* court observed that *Sparks* requires proof of how the building was used. *Id.* ¶ 15. Specifically, the State did not present testimony from a witness with personal knowledge that the building was an active church on the date of the offenses. *Id.* ¶ 18. The *Cadena* court observed, however, that a police officer who testified to being familiar with the church due to regular patrol of the neighborhood would have had sufficient personal knowledge to testify as to the church's active status. *Id.*

¶ 28     Finally, Hardman relies on *People v. Boykin*, which considered whether the State had proved that "Our Lady of Peace" was a school for purposes of the enhancement under section 407(b)(2) (720 ILCS 570/407(b)(2) (West 2008)). 2013 IL App (1st) 112696, ¶ 5. Relying on *Ortiz* and *Cadena*, the defendant argued that the evidence was insufficient. *Id.* ¶¶ 11-12. The *Boykin* court found that the case was analogous to *Cadena*, where "there was no evidence of how the testifying officer would have known that the church was active on the dates of the offenses." *Id.* ¶¶ 14-15. In *Boykin*, the State had presented officer testimony that the offense took place within 1000 feet of a "school," but "there was no evidence presented to show how those officers had personal knowledge of the operation of that building." *Id.* ¶ 15. Citing *Cadena*, the *Boykin* court noted that "[t]he officers did not testify that they lived in the area or that they regularly patrolled the neighborhood, so as to allow an inference that they had

personal knowledge as to whether the school was in operation on the date of the offense." *Id.* The *Boykin* court also commented that "there was even less evidence presented than in *Cadena*, as there were no questions asked at trial regarding whether Our Lady of Peace was an 'active' school." *Id.* For these reasons, the *Boykin* court reversed the defendant's conviction for unlawful delivery of a controlled substance within 1000 feet of a school and affirmed the defendant's conviction for unlawful delivery of a controlled substance. *Id.* ¶ 17.

¶ 29    Turning to *Young*, we disagree with Hardman's contention that *Young* requires the State to present evidence as to whether a school is active or operational on the date of the offense. The decisive factor in *Young* was that the term "school" did not encompass the *type* of school at issue therein. 2011 IL 111886, ¶ 19 (the term "school" was not defined "to include preschools"). This court did not base its holding upon whether the State had presented enough particularized evidence as to whether the preschool was active or operational on the day of the offense. Such evidence was not necessary to the conclusion that the term "school" did not extend to preschools for purposes of the Controlled Substances Act.

¶ 30    With the exception of *Boykin*, we find each of the appellate court cases distinguishable because each dealt with a statutory enhancing location other than a school. *Morgan* involved a "public park" that, based on its established definition, necessarily required evidence relevant to whether the property at issue was "a piece of ground in a city or village set apart for ornament or to afford the benefit of air, exercise or amusement." (Internal quotation marks omitted.) 301 Ill. App. 3d at 1031.

¶ 31    *Fickes*, *Sparks*, *Ortiz*, and *Cadena* do not support Hardman's position for two reasons. *Fickes*, 2017 IL App (5th) 140300; *Sparks*, 335 Ill. App. 3d at 251; *Ortiz*, 2012 IL App (2d) 101261; *Cadena*, 2013 IL App (2d) 120285. First, each of these cases involved the statutory enhancing location of a church. Subsections 407(b)(1)-(6) provide for aggravated penalties for drug violations occurring "within 1,000 feet of the real property comprising any church, synagogue, or other building, structure, or place *used primarily for religious worship*." (Emphasis added.) 720 ILCS 570/407(b)(1)-(6) (West 2012). Conversely, subsections 407(b)(1)-(6) do not speak to any "use" requirement in the context of a school locality enhancement. *Id.* This court "will not depart from the plain statutory language by reading into it exceptions, limitations, or conditions" that are not found in a statute. *People v. Roberts*, 214 Ill. 2d 106, 116 (2005).

¶ 32    Second, section 407(c) makes clear that the State need not demonstrate that a building was active or operational on the day of the offense. See 720 ILCS 570/407(c) (West 2012). Section 407(c) provides: "[r]egarding penalties prescribed in subsection (b) for violations committed in a school or on or within 1,000 feet of school property, the time of day, time of year and whether classes were currently in session at the time of the offense is irrelevant." 720 ILCS 570/407(c) (West 2012); *People v. Daniels*, 307 Ill. App. 3d 917, 929 (1999) ("The inclusion of section 407(c) is the legislature's way of ensuring that schools remain drug-free zones even when school is not in session."). Section 407(c) is directed only at schools. 720 ILCS 570/407(c) (West 2012). Section 407 does not except such circumstances from consideration for any other statutory enhancing location. Requiring particularized evidence as to a purported school building's active or operational status on the day of an offense would run counter to section 407(c)'s plain language.

¶ 33    *Boykin* also fails to support Hardman's position. *Boykin*'s reasoning and holding is based on *Cadena*, which involved the enhancing location of a church. As discussed, subsections 407(b)(1)-(6) require the State to demonstrate that the purported church was "used primarily for religious worship." See 720 ILCS 570/407(b)(1)-(6) (West 2012). Conversely, subsections 407(b)(1)-(6) and section 407(c) make clear that the State need not present particularized evidence as to a purported school's use. Requiring such evidence would necessarily and impermissibly read a use requirement into the statute and conflict with section 407(c).

¶ 34    For these reasons, we reject Hardman's argument that, for purposes of demonstrating that an offense took place within 1000 feet of a school under section 407(b), the State must present particularized evidence that a building is an "active" or "operational" school on the day of the offense. We now address whether the testimony presented at Hardman's trial was sufficient to prove that Hardman's underlying offense occurred within 1000 feet of a school. 720 ILCS 570/407(b)(1) (West 2012).

¶ 35                                    Sufficiency of the Evidence

¶ 36    Having determined that, for purposes of the Illinois Controlled Substances Act, the State need not present particularized evidence that a building is an "active" or "operational" school on the day of the offense, we now consider the sufficiency of the evidence presented at Hardman's bench trial.

¶ 37    "In reviewing the sufficiency of the evidence in a criminal case, our inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." *People v. Baskerville*, 2012 IL 111056, ¶ 31. All reasonable inferences from the evidence must be drawn in favor of the prosecution. *People v. Martin*, 2011 IL 109102, ¶ 15. "This standard of review does not allow the reviewing court to substitute its judgment for that of the fact finder on questions involving the weight of the evidence or the credibility of the witnesses." *People v. Jackson*, 232 Ill. 2d 246, 280-81 (2009). "[I]n weighing evidence, the trier of fact is not required to disregard inferences which flow normally from the evidence before it, nor need it search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt." *Id.* at 281. This court "will not reverse a criminal conviction unless the evidence is so unreasonable, improbable, or so unsatisfactory as to justify a reasonable doubt of the defendant's guilt." *People v. Campbell*, 146 Ill. 2d 363, 375 (1992).

¶ 38    Taking the evidence in the light most favorable to the State, we find that a rational trier of fact could have found that the testimony gave rise to a reasonable inference that 646 North Lawndale Avenue was a school. Hardman asserts that, because no one with personal knowledge of the building's operation on the date of the offense testified, the State failed to prove that 646 North Lawndale Avenue was a school. As discussed, Hardman's particularized evidence argument fails. Officer Harmon's and Officer Ruggiero's testimony demonstrated familiarity with 646 North Lawndale Avenue and the surrounding area.

¶ 39    Officer Ruggiero stated that he had worked in the eleventh district for seven years, that he was a patrol officer there, and that he had made "numerous arrests in that area." Officer Ruggiero described the area where the offense occurred as residential and said that it took place "right next to a school called Ryerson Elementary School at that time." Officer Ruggiero

had also previously conducted surveillance of the area at least 20 times during that part of the year.

¶ 40 Hardman suggests that Officer Ruggiero demonstrated a lack of personal knowledge because he merely responded on cross-examination that "[i]t is an active neighborhood" when asked whether people were coming and going, taking their kids to school. Again, Hardman's contention relies on the assumption that Officer Ruggiero was required to know exactly what happened in the building on the date of the offense. As mentioned, such exacting testimony is not necessary. Under section 407(c), whether people were coming and going, taking their kids to school, is irrelevant to the building's status as a school. 720 ILCS 570/407(c) (West 2012) ("[T]he time of day, time of year and whether classes were currently in session at the time of the offense [are] irrelevant.").

¶ 41 Officer Harmon testified that he had worked in the eleventh district for nine years, that he was familiar with the area where the offense occurred, including the schools near that location, and that the school was named Ryerson on the date of the offense. Officer Harmon also testified that the name of the school had changed to Laura Ward.

¶ 42 Hardman maintains that, "[a]t best, the State's evidence showed that the building was undergoing changes that summer, as indicated by the different names." We reject this argument. A rational trier of fact could have found that Ryerson Elementary became Laura Ward Elementary. A change in school name, alone, does not mean that 646 North Lawndale Avenue stopped being a school during the transition.

¶ 43 Hardman also cites *People v. Ross*, 229 Ill. 2d 255 (2008), contending that to presume that a building that is labeled as a school is, in fact, a school unless rebutted by proof to the contrary creates an unconstitutional mandatory rebuttable presumption. This argument fails. Nowhere does section 407 state that the trier of fact must presume that, once a witness uses the word "school" to describe a building, the building is in fact a school. The trier of fact was at all times free to accept or reject a conclusion that the evidence demonstrated that 646 North Lawndale Avenue was a school. The very case upon which Hardman relies, *Boykin*, explained that "[t]he officers did not testify that they lived in the area or that they regularly patrolled the neighborhood, so as to allow an inference that they had personal knowledge as to whether the school was in operation on the date of the offense." 2013 IL App (1st) 112696, ¶ 15.

¶ 44 In the instant case, not only did the evidence show that 646 North Lawndale Avenue was named as a school, Officer Harmon's and Officer Ruggiero's testimony revealed their familiarity with the area where 646 North Lawndale Avenue was located. Both officers had worked in the area for years, and both knew enough about the area to know that the name of the school had changed. As mentioned, a "trier of fact is not required to disregard inferences which flow normally from the evidence." *People v. Jackson*, 232 Ill. 2d 246, 281 (2009). The logical inference, here, is that both officers knew the area well enough to know that 646 North Lawndale Avenue was still a school, despite the school's change in name.

¶ 45 We agree with the appellate court that the status of 646 North Lawndale Avenue as a school could be inferred from the testimony of two officers with demonstrated familiarity with the area due to their having worked in the area for years. Therefore, we affirm Hardman's conviction for possession of a controlled substance with intent to deliver within 1000 feet of a school. 720 ILCS 570/407(b)(1) (West 2012). We now address whether Hardman is entitled to

outright vacatur of the public defender reimbursement fee or remand for a proper hearing.

¶ 46                          Public Defender Reimbursement Fee

¶ 47      Section 113-3.1(a) of the Code of Criminal Procedure of 1963 permits circuit courts to order defendants who receive the services of appointed counsel to pay a public defender reimbursement fee. 725 ILCS 5/113-3.1(a) (West 2012). The prior version of this statute did not provide for a hearing or for consideration of a defendant's ability to pay the fee. *People v. Love*, 177 Ill. 2d 550, 557 (1997). Thus, in *People v. Cook*, this court held that "[a] summary decision which orders reimbursement without affording a hearing with opportunity to present evidence and be heard acts to violate an indigent defendant's right to procedural due process." 81 Ill. 2d 176, 186 (1980). Accordingly, the Illinois legislature enacted section 113-3.1 to remedy the due process violation identified in *Cook* by requiring that a trial court conduct a hearing that considers the defendant's financial ability to pay the fee *before* the fee may be ordered. *Love*, 177 Ill. 2d at 559. The hearing must occur within 90 days of the entry of the final order disposing of the case. 725 ILCS 5/113-3.1(a) (West 2012).

¶ 48      Hardman asserts that the circuit court violated his due process rights when it failed to notify him that it was considering imposing the fee and did not provide Hardman an opportunity to present evidence regarding his ability to pay the fee. See *People v. Somers*, 2013 IL 114054, ¶ 14 ("[T]he court must give the defendant notice that it is considering imposing the fee, and the defendant must be given the opportunity to present evidence regarding his or her ability to pay and any other relevant circumstances."). Thus, Hardman contends that the circuit court improperly assessed the $500 public defender reimbursement fee without holding a hearing, pursuant to section 113-3.1(a), to determine his ability to pay the fee. See 725 ILCS 5/113-3.1(a) (West 2012). Hardman also argues that, in light of judicial economy and public policy, no case should be remanded for the imposition of a public defender fee where the defendant did not receive a proper hearing the first time.

¶ 49      The appellate court concluded, and the State conceded, that the trial court did not conduct a sufficient hearing. 2016 IL App (1st) 140913-U, ¶ 19. We note that, although Hardman failed to object to the imposition of the public defender reimbursement fee at his sentencing hearing, the issue is not forfeited. See *Love*, 177 Ill. 2d at 564 (1997); *People v. Carreon*, 2011 IL App (2d) 100391, ¶ 11 ("where a trial court imposes this fee without following the appropriate procedural requirements, application of the forfeiture rule is inappropriate").

¶ 50      At issue is whether the proper remedy calls for outright vacatur of the fee or remand for a compliant hearing. Whether the appellate court should have vacated the public defender reimbursement fee outright instead of remanding for a hearing on his ability to pay raises a question of law, subject to *de novo* review. See *People v. Gutierrez*, 2012 IL 111590, ¶ 16.

¶ 51      Section 113-3.1(a) provides:

          "Whenever under either Section 113-3 of this Code or Rule 607 of the Illinois Supreme Court the court appoints counsel to represent a defendant, the court may order the defendant to pay to the Clerk of the Circuit Court a reasonable sum to reimburse either the county or the State for such representation. In a hearing to determine the amount of the payment, the court shall consider the affidavit prepared by the defendant under Section 113-3 of this Code and any other information pertaining to the defendant's financial circumstances which may be submitted by the parties. Such hearing shall be

- 11 -

conducted on the court's own motion or on motion of the State's Attorney at any time after the appointment of counsel but no later than 90 days after the entry of a final order disposing of the case at the trial level." 725 ILCS 5/113-3.1(a) (West 2012).

¶ 52    Hardman contends that, if "no hearing" on a defendant's ability to pay and his financial circumstances took place within 90 days, this court has held that the proper result is to vacate the fee outright. See *Gutierrez*, 2012 IL 111590, ¶ 28. Therefore, because the trial court asked no questions about Hardman's financial circumstances and gave him no opportunity to present evidence, Hardman maintains that the proceedings did not meet the threshold requirement to be considered "some sort of a hearing" under *Somers*. See 2013 IL 114054, ¶¶ 14-15. Because "no hearing" was held within 90 days of the final order disposing of the case at the trial level, as required under section 113-3.1(a), Hardman contends that the fee must be vacated without remand.

¶ 53    The State argues that section 113-3.1(a)'s timing requirement governs the trial court's assessment of a public defender fee in the first instance, not the remedies available on appeal from a timely, but improper, assessment. The State acknowledges that the hearing was deficient but asserts that a hearing still took place. The State rejects Hardman's contention that *Gutierrez* holds that, whenever a hearing has not been held within 90 days, that remand is an inappropriate remedy. Finally, the State asserts that section 113-3.1(a)'s 90-day timing requirement is directory. However, the State posits that this court need not resolve the issue of whether section 113-3.1(a) is mandatory or directory because the requirement governs the timing of the trial court's assessment of the fee in the first instance.

¶ 54    In *Gutierrez*, this court considered whether the appellate court had properly remanded for notice and a hearing on the defendant's ability to pay a public defender fee. 2012 IL 111590, ¶ 1. There, neither the court nor the State had moved for imposition of the public defender reimbursement fee. *Id.* ¶ 24. Rather, the circuit clerk imposed the fee. *Id.* In explaining that the cause should not have been remanded, this court stated: "The circuit clerk had no authority to impose the public defender fee on its own, and, because neither the State nor the circuit court was seeking a public defender fee, the appellate court should have vacated the fee outright." *Id.*

¶ 55    Hardman's reliance upon *Gutierrez* is misplaced. In *Gutierrez*, neither the State nor the circuit court requested reimbursement. *Id.* As we explained, "[p]ursuant to statute, a public defender fee may be imposed *only by the circuit court* after notice and a hearing on the defendant's ability to pay." (Emphasis added.) *Id.* ¶ 26. The record did not indicate that the circuit court was considering ordering the imposition of a public defender reimbursement fee. *Id.* ¶ 24. Because the fee was imposed by the circuit clerk, who was without the statutory authority to do so, there was no circuit court order for reimbursement. And because there was no circuit court order for reimbursement of a public defender fee, the appellate court could not remand for a hearing on an order that did not exist. This court noted that "the statute clearly does not contemplate the State asking for a public defender fee for the first time when the case is on appeal." *Id.* ¶ 23.

¶ 56    Next, Hardman cites *Somers*, in which we concluded that the proper remedy was to remand for a proper hearing. 2013 IL 114054, ¶ 20. Hardman maintains that *Somers* is distinguishable because, there, the circuit court had asked three questions about the defendant's employment status before imposing the fee. *Id.* ¶ 4. Essentially, Hardman argues that, despite the

imposition of a fee at his sentencing hearing, no hearing occurred because the circuit court failed to inquire into his financial circumstances as the circuit court did in *Somers*. *Id.*

¶ 57 In *Somers*, this court considered whether the appellate court properly remanded for a proper public defender reimbursement fee hearing when more than 90 days had elapsed since the trial court's entry of a final order. *Id.* ¶ 1. Before imposing the public defender fee, the trial court asked the defendant the following questions: whether defendant thought he could get a job when he was released from jail, if defendant would use the money he earned from a job to pay his fines and costs, and if there was any physical reason why he could not work. *Id.* ¶ 4. The defendant appealed, arguing that the trial court had not complied with section 113-3.1(a). *Id.* ¶ 6. The defendant asked the appellate court to remand the cause for a proper hearing. *Id.* The appellate court did so. *Id.* However, the defendant subsequently filed a petition for rehearing, citing *Gutierrez* and arguing that the cause should not have been remanded because more than 90 days had elapsed. *Id.* The appellate court denied the petition for rehearing, and we allowed the defendant's petition for leave to appeal. *Id.* ¶¶ 6-7.

¶ 58 Before this court, the defendant argued that, because more than 90 days had elapsed, the appellate court was without authority to remand for a hearing because section 113-3.1(a)'s 90-day time limit is mandatory. *Id.* ¶ 9. The State argued that the actual issue was that the hearing held by the trial court was insufficient to satisfy section 113-3.1(a)'s requirements. *Id.* ¶ 13. Because the trial court complied with the statute's time limit, the State argued that the court did not need to reach the issue of whether the 90-day time limit is mandatory or directory. *Id.*

¶ 59 We agreed that the few questions posed by the trial court to defendant regarding his employment status were insufficient to satisfy section 113-3.1(a). *Id.* ¶ 14. We made clear what is required for a proper hearing pursuant to section 113-3.1(a) and then concluded that a hearing, albeit an insufficient one, had occurred:

"To comply with the statute, the court may not simply impose the fee in a perfunctory manner. [Citation.] Rather, the court must give the defendant notice that it is considering imposing the fee, and the defendant must be given the opportunity to present evidence regarding his or her ability to pay and any other relevant circumstances. [Citation.] The hearing must focus on the costs of representation, the defendant's financial circumstances, and the foreseeable ability of the defendant to pay. [Citation.] The trial court must consider, among other evidence, the defendant's financial affidavit. [Citations.]

Clearly, then, the trial court did not fully comply with the statute, and defendant is entitled to a new hearing. Just as clearly, though, the trial court did have *some sort of a hearing* within the statutory time period. The trial court inquired of defendant whether he thought he could get a job when he was released from jail, whether he planned on using his future income to pay his fines and costs, and whether there was any physical reason why he could not work. Only after hearing defendant's answers to these questions did the court impose the fee. Thus, we agree with the State's contention that the problem here is not that the trial court did not hold a hearing within 90 days, but that the hearing that the court did hold was insufficient to comply with the statute." (Emphasis added.) *Id.* ¶¶ 14-15.

¶ 60    Because the trial court had complied with the 90-day statutory time period, we determined that there was no bar to remanding the cause for a proper hearing. *Id.* ¶ 18.

¶ 61    Since *Somers*, appellate court panels have determined that "remand is proper if 'some sort of a hearing' was held within the statutory period." *People v. Glass*, 2017 IL App (1st) 143551, ¶ 12. However, an appellate conflict has developed due to situations wherein a trial court afforded a defendant a less sufficient hearing than in *Somers*. See, *e.g.*, *id.* ¶ 9 (court asked defense counsel how many times he had appeared in court, court noted that the case proceeded to a jury trial, and court then stated that $500 would be appropriate); *People v. Castillo*, 2016 IL App (2d) 140529, ¶ 1 (court imposed fee after assistant public defender told the court that the public defender's office had prepared a motion in defendant's case); *People v. Moore*, 2015 IL App (1st) 141451, ¶ 30 (State reminded court of its motion for reimbursement, court asked defense counsel how many times she had appeared, and court assessed the fee).

¶ 62    Appellate court panels have attached one of two meanings to what is contemplated by "some sort of a hearing." Some panels have concluded that a hearing does not occur where a court in no way addresses a defendant's ability to pay the public defender fee. See *Moore*, 2015 IL App (1st) 141451; *Castillo*, 2016 IL App (2d) 140529, ¶¶ 14-15; *People v. Montgomery*, 2016 IL App (1st) 140507-U, ¶ 19; *People v. Lozada*, 2016 IL App (1st) 143143-U, ¶ 12. Other panels have focused more generally upon the State's motion to impose a fee and the ordinary definition of a "hearing." See *Glass*, 2017 IL App (1st) 143551, ¶¶ 13, 15; *People v. Williams*, 2013 IL App (2d) 120094, ¶ 20; *People v. Rankin*, 2015 IL App (1st) 133409, ¶ 21; *People v. Adams*, 2016 IL App (1st) 141135, ¶ 26; *People v. Alejo*, 2015 IL App (1st) 133508-U, ¶ 29; *People v. Garcia*, 2015 IL App (1st) 133502-U, ¶ 10; *People v. Turner*, 2015 IL App (1st) 140028-U, ¶ 18.

¶ 63    Those panels concluding that "some sort of a hearing" requires some inquiry into the defendant's financial circumstances attribute much weight to the fact that, in *Somers*, this court observed that the trial court had asked the defendant three questions about his financial circumstances. 2013 IL 114054, ¶ 15. Specifically, after concluding that the trial court did not satisfy section 113-3.1(a) but that "some sort of a hearing" had still occurred, this court observed that the trial court had asked defendant about his ability to obtain a job, whether defendant would use future income to pay for his fines and costs, and if there was a physical reason why defendant may not be able to work. *Id.* As one panel reasoned, if "some sort of a hearing" means only a hearing in the ordinary or abstract sense, it would have been pointless for this court to focus on the trial court's three questions about the defendant's finances. *Castillo*, 2016 IL App (2d) 140529, ¶ 13. For example, "[h]ad the supreme court needed only to distinguish *Gutierrez*, *i.e.*, if all that had been required were the trial court's imposition of the fee in open court, those questions would have been irrelevant." *Id.*

¶ 64    To illuminate what was meant by "some sort of a hearing" in *Somers*, other panels look to *People v. Johnson*, wherein this court defined the term "hearing," albeit in a different context. 206 Ill. 2d 348, 358 (2002); *Glass*, 2017 IL App (1st) 143551, ¶ 15; *Williams*, 2013 IL App (2d) 120094, ¶ 20. There, this court defined the term "hearing" as it is denoted in Black's Law Dictionary. *Johnson*, 206 Ill. 2d at 358 (a hearing is a " 'judicial session usu[ally] open to the public, held for the purpose of deciding issues of fact or of law, sometimes with witnesses testifying.' Black's Law Dictionary 725 (7th ed. 1999)."). For example, the *Williams* court opined that this definition buttresses the *Somers* court's statement that a hearing "clearly" took

place. *Williams*, 2013 IL App (2d) 120094, ¶ 24. If a hearing "clearly" took place in *Somers*, this suggests that a lesser inquiry would suffice to constitute a hearing. *Id.* ¶ 20.

¶ 65 It is clear that the assessment of the public defender reimbursement fee in Hardman's case did not comply with section 113-3.1(a). After the State reminded the court of its motion, the trial court asked defense counsel how many times she had appeared, noted that the case went to trial, and then imposed a fee of $500. Among other deficiencies, the trial court did not consider Hardman's financial circumstances and did not obtain a financial affidavit. See 725 ILCS 5/113-3.1(a) (West 2012). We need only determine whether "some sort of a hearing" occurred and, in turn, the proper remedy.

¶ 66 Despite the deficiencies attendant to the trial court's imposition of the fee, we remand the cause for a proper hearing because "some sort of a hearing" occurred. Under *Somers*, "some sort of a hearing" encompasses a proceeding that meets the ordinary definition of a hearing, as noted above. In the instant case, the State reminded the court of the motion for reimbursement at the sentencing hearing. A judicial session occurred, and the issue of whether Hardman should be assessed a public defender fee was considered. It was only after the trial court asked the public defender how many times she had appeared that the court assessed the fee. The parties were present, and the hearing occurred within the 90-day time limit. In *Somers*, we did not state that the questions asked by the trial court were determinative of whether a hearing had occurred. See 2013 IL 114054, ¶ 15.

¶ 67 Although a trial court's compliance with section 113-3.1(a) would satisfy the definition of a "hearing," a trial court's failure to satisfy section 113-3.1(a) does not automatically mean that there was "no hearing." As the *Williams* court observed, were we to require an inquiry into a defendant's finances as a precondition for remand, this would "inevitably require us to artificially parse out what constitutes an insufficient hearing that is adequate to trigger a remand ***. For example, would one financial question be enough of an inquiry to allow for a remand?" 2013 IL App (2d) 120094, ¶ 25. Also, unlike in *Gutierrez*, the State had clearly sought imposition of the public defender reimbursement fee before the trial court. *Gutierrez*, 2012 IL 111590, ¶ 23 ("the statute clearly does not contemplate the State asking for a public defender fee for the first time when the case is on appeal").

¶ 68 Hardman contends that, under this reading of *Somers*, the outcome in *People v. Daniels* would have been different. See *People v. Daniels*, 2015 IL App (2d) 130517. There, the trial court made no reference to a public defender fee during the sentencing hearing but assessed the fee in a written order later that day. *Id.* ¶ 29. The appellate court determined that the fee should be vacated because it was assessed without a hearing. *Id.* ¶ 30. We reject Hardman's argument. Unlike the instant case, *Daniels* involved imposition of a fee in the absence of the parties. *Id.* ¶ 29.

¶ 69 Finally, Hardman argues that, because this court "may provide by rule for procedures for the enforcement of orders entered under this Section" (725 ILCS 5/113-3.1(d) (West 2012)), this court should conclude that no case should ever be remanded for the imposition of a public defender fee where the defendant did not receive a proper hearing the first time. We decline to address Hardman's policy argument. Although we have repeatedly expressed our disappointment that defendants are often deprived of a proper hearing on the issue of a public defender reimbursement fee, we remain confident that circuit courts will properly comply with

the statute in the first instance. See *Somers*, 2013 IL 114054, ¶ 18; *Gutierrez*, 2012 IL 111590, ¶ 26.

¶ 70    Based on our conclusion that a hearing occurred within the statutory time limit, we need not address the issue of whether section 113-3.1(a)'s 90-day time limit is mandatory or directory. See *Somers*, 2013 IL 114054, *¶* 18. Because we conclude that "some sort of a hearing" occurred, we hold that the proper remedy in Hardman's case is to remand for a proper hearing.

¶ 71                                    CONCLUSION

¶ 72    To prove that an offense occurred within 1000 feet of a school, for purposes of section 407(b)(1), the State is not required to present particularized evidence that the building is an active or operational school on the date of the offense. 720 ILCS 570/407(b)(1) (2012). We find that, based on the testimony presented at trial, a rational trier of fact could have found that the State had proved that the offense took place within 1000 feet of a school. We affirm Hardman's conviction and sentence.

¶ 73    The trial court failed to comply with the requirements of section 113-3.1(a), and therefore we affirm the appellate court's vacatur of the public defender fee. Because "some sort of a hearing" occurred, we hold that the proper remedy is to remand for a proper hearing before a public defender fee may be imposed. Thus, the appellate court properly remanded for a new hearing.

¶ 74    Appellate court judgment affirmed; cause remanded.