2020 IL App (1st) 171207-U

No. 1-17-1207

Order filed December 23, 2020

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 15 CR 434 |
| | ) | |
| GREGORY MORTON, | ) | Honorable |
| | ) | Timothy Joseph Joyce, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE McBRIDE delivered the judgment of the court.
Justices Ellis and Burke concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Defendant's conviction for criminal damage to government-supported property is affirmed over his challenge to the sufficiency of the evidence.

¶ 2    Following a bench trial, defendant Gregory Morton was convicted of criminal damage to government-supported property and sentenced to two years' probation and 10 days in the sheriff's work program. Defendant argues on appeal that the State failed to prove his guilt beyond a reasonable doubt. We affirm.

¶ 3    Defendant was charged by information with one count of criminal damage to government-supported property of $500 or less (720 ILCS 5/21-1.01(a)(1) (West 2014)).[1]

¶ 4    At trial, James Curtin testified that he supervised vehicle parking boots for the City of Chicago's finance department. As part of his duties, Curtin inspected boots on vehicles and, as necessary, applied boots and towed vehicles. When a boot is properly affixed to the wheel of a vehicle, a disk is visibly tight to the wheel, an inside arm wraps around the wheel, and the boot does not jiggle or move when touched.

¶ 5    Around 1:15 a.m. on November 15, 2014, one of Curtin's employees called him to tow a vehicle near the 7500 block of South Langley Avenue in Chicago. When Curtin arrived, he noticed that two vehicles in the area had been booted. The first booted vehicle Curtin saw was a white Lincoln SUV, but he had been called to tow a different booted vehicle further down the street. Still, Curtin quickly inspected the boot applied to the Lincoln's front driver's side wheel and noted that it was properly applied and immobilized the vehicle.

¶ 6    Curtin drove down the street to the vehicle he had been called to tow, which was about 200 feet away. Curtin parked near that vehicle and waited for the tow truck. Then, Curtin heard the sound of metal on metal. He looked in his rearview mirror and saw a person crouching near the front of the Lincoln. The street was well illuminated. Curtin stuck his head out of his vehicle and saw the person pulling on the boot. Curtin notified the police on a two-way radio, then reversed his vehicle down the street to block the Lincoln. Curtin saw the person who had been pulling on the boot "very clearly," and identified him as defendant in court. Defendant jumped into the

---

[1] The information originally alleged damage between $500 and $10,000, but was amended on the date of trial.

Lincoln, locked the doors, and started the vehicle. Police officers arrived a minute or two later and detained defendant.

¶ 7     Curtin reinspected the boot, removed it from defendant's vehicle, and showed it to the officers. The boot was damaged: the disk covering the outside of the wheel had been pulled away, and a bracket on the inside holding the disk to the arm was pulled apart, so the boot "allowed more play" and could not be tightly affixed to the wheel. Curtin believed the boot was too damaged to be used again, so he put the boot in his vehicle. Replacing the boot would cost $445. Curtin estimated he was at the scene for 90 minutes after he saw defendant tampering with the boot.

¶ 8     On cross-examination, Curtin testified that it took him less than a minute to reverse his vehicle back to the Lincoln after hearing the metal on metal sound. Defendant was wearing a brown coat and had a cigar, but Curtin could not recall if he was wearing a hat or gloves. Curtin asked defendant "what the hell are you doing[?]" and defendant entered his vehicle and started it. Defense counsel showed Curtin pictures of defendant's vehicle. Curtin could not recall the vehicle's "exact condition" that night or confirm whether the photographs accurately depicted the vehicle as he saw it, but stated it may have been dirtier or had a couple of scratches on the night in question. Curtin was unsure what caused the metal on metal sound, but stated the boots are made of cast hollow aluminum and are "not solid." Curtin did not photograph the damaged boot.

¶ 9     Curtin took the boot back to the office and put it in a bin for damaged boots, but his office does not keep records for damaged boots. Curtin did not know how frequently damaged boots were retrieved from the bin by the third party that repairs or recycles them. Curtin did not recall if he had seen that boot again after putting it in the bin, given that 250 to 300 boots are applied per day. However, records are kept of which boots are applied to which vehicles—when a city employee places a boot on a vehicle, the employee enters the information into a computer database

or calls the office and directs someone to input the information and completes a paper form that the employee submits at the end of the shift.

¶ 10 Officer Jamie Rivas testified that, when he arrived on the scene, he saw defendant standing next to the Lincoln. After speaking with Curtin, Rivas noticed that the boot was "ajar" from the Lincoln's wheel and arrested defendant.

¶ 11 On cross-examination, Rivas admitted that he was unsure of how the boot or vehicle looked before the boot was put on defendant's vehicle. Rivas did not closely inspect the boot, photograph it, or log its serial number. Defendant was standing outside his vehicle smoking his cigar, and did not have anything else in his hands. Rivas could not recall how defendant was dressed or the "particulars" of any conversation with defendant. Defense counsel asked Rivas if his "only recollection" of the events came from the arrest report, which Rivas used to refresh his memory before testifying. Rivas answered "[c]orrect" and noted that he could not remember whether he or his partner wrote the arrest report. When asked by the court whether he had "any independent memory of this event," Rivas stated "[n]o, it would be the report." On redirect examination, Rivas noted that defendant's cigar was not mentioned in the arrest report, but he remembered defendant smoking a cigar.

¶ 12 Defendant called Ryne Quiroz, a parking investigator for the City of Chicago. Quiroz testified that he was familiar with the boot record keeping procedures and part of his duties were to investigate complaints related to boots. Each boot has a serial number in three locations. The city keeps records of which boot is used on which vehicle.

¶ 13    Defense counsel introduced a spreadsheet showing that a boot was placed on defendant's vehicle on the 7500 block of South Langley on November 15, 2014, at 12:55 a.m.[2] Quiroz testified the spreadsheet showed that the identification number of the employee who placed the boot on defendant's vehicle was 018. The spreadsheet then showed that the same boot was placed on a different vehicle located at 749 East 76th Street on November 15, 2014, at 1:34 a.m., also by employee number 018. The boot was then used again on November 20, November 26, December 3, and December 5. A "tow sheet" for defendant's vehicle showed that Curtin, whose identification number is 180, requested a tow of defendant's vehicle.

¶ 14    On cross-examination, Quiroz explained that if the person who inputs the boot's data enters even one digit of the boot's serial number incorrectly on the computer, the boot would appear on the incorrect spreadsheet. Quiroz stated that the people who input boot data sometimes err, and that he had seen mistakes whereby data was entered incorrectly and a boot appeared on an incorrect spreadsheet. Quiroz's job was to investigate and correct such mistakes. On redirect examination, Quiroz clarified that there had been no investigation into the boot record at issue.

¶ 15    Defendant testified that, around 12:30 a.m., he was picking up food from a restaurant near where his vehicle was parked. Defendant identified the photographs of his undamaged vehicle that his counsel had shown Curtin, and stated they were taken about a month after the incident but reflected the condition of his vehicle the night it was booted.

¶ 16    Defendant noticed a boot attached to his vehicle as he approached it. He grabbed a cigar he had placed on his windshield wipers, entered and started the vehicle, and called someone to

---

[2] The State stipulated to the foundation for the spreadsheet, and defendant entered the spreadsheet into evidence. Defendant did not include the spreadsheet in the record on appeal, but the relevant page was attached to defendant's motion for a new trial, which is in the record.

come get him. Defendant saw Curtin park beside him about two minutes later. Defendant lowered his window and "let him know how unhappy I was about him attaching the boot to my car in so many words." Defendant denied touching the boot or putting his vehicle in gear. Curtin did not say anything, just looked at defendant, which irritated defendant. Defendant "let him have it, [and] said a few choice words to him."

¶ 17    The police arrived five to seven minutes later. Defendant stayed in his vehicle, smoking his cigar. The police asked him to leave the vehicle, and defendant saw officers speaking with Curtin. Two or three minutes later, the officers arrested defendant.

¶ 18    On cross-examination, defendant stated that he ordered food from a restaurant, then entered a bar next door to greet some friends. Defendant did not recall drinking. Defendant did not recall speaking with Detective David Brandt but remembered having a conversation with a detective at the police station when he was half-asleep. Defendant denied telling Brandt that he had been at a club down the street and tried to drive the vehicle before realizing there was a boot on it. Defendant denied crouching to look at the boot or see if it had damaged his vehicle, stating that it was cold and he was angry and wanted to enter the vehicle and call someone so he could go home. However, defendant was calm when the officers arrested him. Defendant never looked at or touched the boot.

¶ 19    Responding to questions from the court, defendant reiterated that Curtin did not say anything to him but that he knew Curtin was "the boot guy" because Curtin's vehicle said "department of revenue" on it.

¶ 20    The State called Brandt in rebuttal. Brandt testified that he spoke with defendant at about 4:50 a.m. Brandt recalled defendant mentioning that he would not try to drive his vehicle with the boot on it because it might damage the vehicle. Defendant told Brandt he was coming from a club. On cross-examination, Brandt stated that he did not inspect the vehicle.

¶ 21 The trial court found that, despite what was shown on the spreadsheet, it was impossible that the boot was put on another vehicle at 1:34 a.m. because Curtin arrived around 1:15 a.m. and it would have taken too long for the police to speak to Curtin and defendant, decide what to do, and arrest defendant. The trial court credited Curtin's account of events and stated it also believed Rivas's testimony. Accordingly, the trial court found defendant guilty.

¶ 22 Defendant filed a motion for a new trial, arguing that the State did not prove that he damaged the boot and that the court erroneously discredited the spreadsheet showing the boot was placed on another vehicle at 1:34 a.m. The court denied the motion. Following a hearing, the court sentenced defendant to two years' probation and 10 days in the sheriff's work program.

¶ 23 On appeal, defendant argues that the State failed to prove beyond a reasonable doubt that he damaged the boot or, alternatively, knowingly damaged the boot.

¶ 24 A reviewing court assesses challenges to the sufficiency of the evidence by determining whether, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *People v. Hardman*, 2017 IL 121453, ¶ 37. In doing so, a reviewing court draws all reasonable inferences in favor of the prosecution, and will not substitute its judgment for the trier of fact's when considering the weight of the evidence or the credibility of the witnesses. *Id.* Accordingly, convictions are not overturned "unless the evidence is so unreasonable, improbable, or so unsatisfactory as to justify a reasonable doubt of the defendant's guilt." (Internal quotation marks omitted.) *Id.*

¶ 25 As charged here, a person commits criminal damage to government-supported property when he knowingly damages government-supported property without the consent of the State. 720 ILCS 5/21-1.01(a)(1) (West 2014). Government-supported property includes "any property supported in whole or in part with State funds, funds of a unit of local government or school

district, or federal funds administered or granted through State agencies." 720 ILCS 5/21-1.01(b) (West 2014). Defendant does not contest the boot was government-supported property, but only whether the State proved he damaged it or knowingly damaged it.

¶ 26    The State's evidence at trial showed that, at 1:15 a.m. on November 15, 2014, Curtin arrived at the 7500 block of South Langley. He inspected the boot affixed to defendant's vehicle and noticed that it was undamaged and properly applied. After he drove to another booted vehicle about 200 feet down the street, Curtin heard metal on metal. He looked towards defendant's vehicle and saw a person crouched down, pulling on the boot. Curtin notified the police and reversed his vehicle to block the person, later identified as defendant, from leaving. Officers arrived within a minute or two. Curtin saw that the boot was damaged and no longer usable, with the disk pulled away from the arm so that it could no longer tightly affix to a wheel. Rivas confirmed that the boot was "ajar" from the wheel. Curtin put the boot in his vehicle, and stayed on the scene for about 90 minutes, later depositing the boot in a bin at the office.

¶ 27    Viewing the evidence in the light most favorable to the State, we find that the State proved beyond a reasonable doubt that defendant damaged the boot. While Curtin did not see defendant damage the boot, he saw defendant pulling on it immediately after hearing the sound of metal on metal, and inspected the boot to find that it had been damaged in the short time since he saw it undamaged. The boots are made of cast hollow aluminum and are "not solid." A rational trier of fact could therefore infer that defendant damaged the boot. See *People v. Hall*, 194 Ill. 2d 305, 330 (2000) (factfinders need not be satisfied beyond a reasonable doubt as to each link in chain of circumstances so long as all evidence, taken together, establishes guilt beyond a reasonable doubt). Given Curtin's testimony, the State was not required to produce physical or documentary evidence of the boot's damage and the fact finder could reject the conflicting account that defendant

provided in his own testimony. See *People v. Gray*, 2017 IL 120958, ¶ 36 (testimony of a single witness, even if contradicted by defendant, is sufficient to convict so long as testimony is positive and credible); *People v. Little*, 2018 IL App (1st) 151954, ¶ 54-56 (lack of photographs merely went to credibility of officer's testimony that he saw defendant kick window of a police vehicle and police chief's testimony that window was undamaged when vehicle left station but broken when it returned). Contrary to the assertion in defendant's reply brief, Curtin's testimony is not so improbable or unsatisfactory that we will overturn the trial court's credibility determination.

¶ 28    In his reply brief, defendant attempts to distinguish his case from *Little* by arguing that, unlike that case, there is no second witness confirming that the property at issue was damaged. However, Rivas testified that he saw the boot ajar from the wheel of defendant's vehicle, and Curtin testified that an undamaged boot affixes tightly, without allowing any play, as the boot on defendant's vehicle did when Curtin first saw it.

¶ 29    Defendant also argues in reply that, while no documentary evidence of the damage existed in *Little*, here, the spreadsheet is documentary evidence that no damage occurred, because it shows that the boot was applied to another nearby vehicle at 1:34 a.m., about 40 minutes after it was applied to his vehicle. The trial court, however, believed that timeline to be impossible given Curtin's testimony that he arrived around 1:15 a.m. The evidence—specifically, Curtin's testimony that he put the boot in his vehicle and was there for about 90 minutes, and the spreadsheet showing the boot's placement on another vehicle within that timeframe by the same employee who put it on defendant's vehicle—was in conflict. Quiroz testified that boots may appear on the incorrect spreadsheet if someone entered the boot's data incorrectly. In light of that testimony, it was the trial court's prerogative to credit Curtin's testimony and find it contrary to human experience that the officers could have arrested defendant so quickly that the boot was

placed on another vehicle at 1:34 a.m., and we will not reweigh that evidence on appeal. *Hardman*, 2017 IL 121453, ¶ 37 (reviewing court will not substitute judgment for trier of fact's when considering weight of evidence or credibility of witnesses).

¶ 30     We also conclude that the evidence is sufficient to prove that defendant damaged the boot knowingly. A person acts knowingly when he is "consciously aware" that a result is "practically certain to be caused by his conduct." 720 ILCS 5/4-5(b) (West 2014). "Knowledge is a question of fact for the trier of fact to decide" (*People v. Frazier*, 2016 IL App (1st) 140911, ¶ 23), and "may be proven by circumstantial evidence, and inferred from the defendant's action and the conduct surrounding it" (*People v. Jackson*, 2017 IL App (1st) 142879, ¶ 24). Where, as here, the statute defining the offense requires that a person act knowingly, that element is also established if defendant acted intentionally, that is, with the conscious objective or purpose to accomplish the result described in the statute defining the offense. 720 ILCS 5/4-4, 4-5 (West 2014).

¶ 31     Defendant admitted at trial that he was angry and wanted to go home. Curtin saw him pulling on the boot just after hearing metal on metal, and shortly thereafter saw that the boot was newly damaged. The boots are made of cast hollow aluminum and are not solidly built. Defendant testified that he "let [Curtin] have it" when Curtin confronted him and boxed in his vehicle, telling Curtin "how unhappy [he] was about [Curtin] attaching the boot to [his] car in so many words."

¶ 32     Again viewing the evidence in the light most favorable to the prosecution, a reasonable factfinder could infer from defendant's act of pulling on the boot, as well as his anger and desire to go home, that defendant knowingly damaged the boot in an attempt to remove or disable it. See *People v. Phillips*, 392 Ill. App. 3d 243, 259 (2009) (inferring that defendant knowingly or intentionally committed battery from act of punching with closed fist and angry conduct prior to battery). While defendant posits that the evidence did not establish the boot could be damaged by

hand, that it is contrary to human experience that he would risk damaging his vehicle by trying to drive with the boot affixed to it, and suggests that he was merely testing the firmness with which the boot was attached, the trier of fact is not required to elevate every hypothesis of innocence to the level of reasonable doubt. *People v. Jackson*, 2020 IL 124112, ¶ 70. Accordingly, we find that the State proved beyond a reasonable doubt that defendant knowingly damaged government-supported property.

¶ 33    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 34    Affirmed.