# Illinois Official Reports

## Appellate Court

---

### *People v. Brown*, 2015 IL App (1st) 131873

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. STANLEY BROWN, Defendant-Appellant. |
| District & No. | First District, Sixth Division<br>Docket No. 1-13-1873 |
| Filed<br>Rehearing denied | May 29, 2015<br>June 23, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-CR-10735; the Hon. Catherine M. Haberkorn, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part; cause remanded with directions. |
| Counsel on Appeal | Michael J. Pelletier, Alan D. Goldberg, and Tonya Joy Reedy, all of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Carol L. Gaines, and Justin R. Kordys, Assistant State's Attorneys, of counsel), for the People. |
| Panel | PRESIDING JUSTICE HOFFMAN delivered the judgment of the court, with opinion.<br>Justices Lampkin and Rochford concurred in the judgment and opinion. |

**OPINION**

¶ 1    Following a bench trial, the defendant, Stanley Brown, was convicted of attempted first-degree murder (720 ILCS 5/8-4(a), 9-1 (West 2010)) and sentenced to 17 years' imprisonment. On appeal from that conviction, the defendant argues that the State failed to prove beyond a reasonable doubt that he had the specific intent to kill. For the reasons which follow, we reverse the defendant's conviction and sentence for attempted first-degree murder, affirm his conviction on all other charges, and remand this cause to the circuit court for resentencing.

¶ 2    As the result of the injuries sustained by Chersari Jones on June 20, 2011, the defendant was charged by information with attempted first-degree murder (720 ILCS 5/8-4(a), 9-1 (West 2010)), two counts of aggravated domestic battery (720 ILCS 5/12-3.3(a) (West 2010)), and three counts of aggravated battery (720 ILCS 5/12-4(a), (b)(1) (West 2010)). The evidence adduced at trial established that the defendant and Jones were acquainted for over 20 years and had been romantically involved since 2005 or 2006. In May of 2007, the defendant and Jones were living together. Jones testified that on May 27, 2007, the defendant struck and kicked her while he was intoxicated. Following this incident, Jones ordered the defendant to move out of her home. Approximately 7 to 8 months later, Jones told the defendant that "if he moved back in he cannot have another drink." Thereafter, the defendant again took up residence in the apartment that Jones shared with her two children.

¶ 3    In the afternoon of June 19, 2011, Jones's children left the apartment to spend the night with Jones's sisters. The defendant also left the apartment that afternoon. Jones testified that, when she went to bed between 10 and 11 p.m., the defendant still had not returned. At approximately 3 a.m. on June 20, 2011, the defendant returned home and came into the bedroom which he shared with Jones. According to Jones, she suspected that the defendant had been drinking, and as a consequence, she got out of bed and went into her daughter's bedroom to sleep. At 5 a.m., Jones got up and began preparing to go to work. When the defendant awoke, Jones told him to gather his belongings as she wanted him to leave the apartment. She stated that she told the defendant that she was going to drive him to his mother's home. According to Jones, the defendant said something, but she was not paying attention and told him that she did not want to argue. Jones testified that, as she was leaving her bedroom, she felt "punching" in her back. She stated that shortly thereafter she felt moisture running down her back, and when she looked down, she saw that she was bleeding. Jones ran out of the apartment and into the rear alley, yelling for help. She testified that she got into her car and drove to the nearest police station.

¶ 4    When Jones arrived at the police station, she encountered Officer Thomas Polick and told him that she had been stabbed. Officer Polick testified that, when he approached Jones's car, he saw blood on her back and on the seat of the car. Officer Polick called for an ambulance.

¶ 5    The ambulance arrived, and Jones was taken to Loyola University Medical Center where she came under the care of Dr. Eric Szczesniak. Dr. Szczesniak testified that Jones presented with four lacerations; two were on the left side of her back near the shoulder blade, one was on the rear of her left triceps, and the fourth was on the upper portion of her back. The lacerations had penetrated the skin as well as some of the deeper tissues. However, there was no injury to the deeper underlying structures. According to Dr. Szczesniak, the cuts were

likely made by a sharp instrument as they were clean and did not have jagged or rough edges. Dr. Szczesniak testified that he cleaned the wounds and sutured them. Although Dr. Szczesniak did not testify to the number of stitches required to close the lacerations, Jones testified that she received 20 stitches. The doctor opined that it was possible that "the area in which Ms. Jones presented wounds could have resulted in her death." According to Dr. Szczesniak, however, the cuts that Jones suffered turned out to be superficial and not life threatening. Jones left the hospital that same day.

¶ 6        By means of a stipulation, the State introduced recordings of phone conversations between the defendant and Jones while the defendant was incarcerated, awaiting trial. In several of these phone conversations, the defendant professed his love for Jones and asked her to get the charges against him dropped and to refuse to testify. In one such recording made of a phone conversation on August 15, 2011, at 6:05 p.m., the defendant told Jones that he never thought that he would ever hurt her or take her life.

¶ 7        After the State rested its case-in-chief, the defendant moved for a directed finding. The motion was denied, and thereafter, the defendant rested without presenting any evidence.

¶ 8        Following closing arguments, the trial court found the defendant guilty of all charges, commenting that "I do believe that he intended to kill her." The trial court based its determination that the defendant intended to kill Jones on a number of factors which it articulated, namely: "this could have been a life threatening situation but was not"; Jones "at the time had given the defendant his last chance to reside in the home"; and "that by leaving the bedroom on that day, and telling [the defendant] to leave *** [the defendant] knew this was over." After finding the defendant guilty on all counts, the trial court held that the two counts of aggravated domestic battery and three counts of aggravated battery merged into the conviction for attempted first-degree murder.

¶ 9        The defendant subsequently filed a motion for a new trial, arguing that the evidence adduced at trial was inconsistent with a conviction for attempted first-degree murder and could only support a conviction for aggravated battery. The trial court denied the defendant's motion for a new trial, again articulating the reasons for finding the requisite intent to support a conviction of attempted first-degree murder which the court had stated when finding the defendant guilty of the offense. Additionally, the trial court also noted that: the defendant had used a sharp knife; he stabbed Jones four times; Jones's wounds were "near organs *** that could have been life threatening"; Dr. Szczesniak testified that Jones's "wounds could have resulted in death"; and the defendant tried to get Jones to drop the charges. After his motion for a new trial was denied, the defendant was sentenced to 17 years' imprisonment. This appeal followed.

¶ 10        In urging reversal of his conviction for attempted first-degree murder, the defendant argues that the State failed to prove beyond a reasonable doubt that he had the specific intent to kill Jones. According to the defendant, the evidence adduced at trial demonstrates that he took actions inconsistent with a specific intent to kill: specifically, he stopped stabbing Jones even though she was neither dead nor dying, and the wounds which she suffered were not life threatening. He requests that we reverse his conviction for attempted first-degree murder and remand this case to the trial court with directions to resentence him for aggravated domestic battery.

¶ 11        The State argues that, when looking at the circumstances surrounding the defendant's actions such as the character of the attack on Jones and his use of a knife, the trial court could

reasonably have found that the defendant possessed the requisite intent to commit first-degree murder.

¶ 12     The State has the burden of proving each element of a criminal offense beyond a reasonable doubt. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 224 (2009). When a criminal conviction is challenged based upon insufficient evidence, we construe all of the evidence in the light most favorable to the State and determine whether any rational trier of fact could have found beyond a reasonable doubt the essential elements of the crime. *Id.* The weight to be given to the testimony of the witnesses, their credibility, and the reasonable inferences to be drawn from the evidence, are all matters to be determined by the trier of fact. *People v. Milka*, 211 Ill. 2d 150, 178 (2004). We will not reverse a criminal conviction unless the evidence is so unreasonable, improbable, or unsatisfactory as to create a reasonable doubt of the defendant's guilt. *People v. Jackson*, 232 Ill. 2d 246, 281 (2009).

¶ 13     "A person commits the offense of attempt when, with intent to commit a specific offense, he or she does any act that constitutes a substantial step toward the commission of that offense." 720 ILCS 5/8-4(a) (West 2010). Section 9-1(a)(1) of the Criminal Code of 1961, provides, in relevant part, as follows:

> "A person who kills an individual without lawful justification commits first degree murder if, in performing the acts which cause the death:
>
> > (1) he either intends to kill or do great bodily harm to that individual or another, or knows that such acts will cause death to that individual or another[.]" 720 ILCS 5/9-1(a)(1) (West 2010).

¶ 14     In order to prove the defendant guilty of the attempt first degree murder of Jones, the State was required to prove beyond a reasonable doubt that he acted with the specific intent to kill her. *People v. Green*, 339 Ill. App. 3d 443, 451 (2003); *People v. Garrett*, 216 Ill. App. 3d 348, 353 (1991). Intent is a state of mind which can be established by proof of surrounding circumstances, including the character of the assault, the use of a deadly weapon, and other matters from which an intent to kill may be inferred. *Green*, 339 Ill. App. 3d at 451. It is the function of the trier of fact to determine the existence of the requisite intent, and its determination will not be disturbed on review unless it clearly appears that there is a reasonable doubt on the issue. *Id.*

¶ 15     In this case, the evidence is more than sufficient to support the circuit court's finding that the defendant is guilty of aggravated domestic battery and aggravated battery. The defendant cut Jones, a member of his household, four times in the back with a knife or other sharp instrument. In his brief before this court, the defendant has not challenged the trial court's finding of guilt on the two counts of aggravated domestic battery and three counts of aggravated battery of which he was charged. As a consequence, any claim of error in the trial court's guilty finding on these counts has been forfeited. *People v. Washington*, 2012 IL 110283, ¶ 62. As stated, the defendant's appeal challenges only his conviction and sentence for attempted first-degree murder.

¶ 16     For the reasons which follow, we do not believe that the character of the attack on Jones and the circumstances leading up to that attack justify an inference that the defendant intended to kill her. In describing the physical sensation she experienced at the time of the attack, Jones stated that she "felt punching" and "pressure" in her back. She felt no pain at that time, only pressure. It was not until Jones felt something moist running down her back that she looked down and saw that she was bleeding. There was no evidence of any struggle

either before or after the attack, nor was there any evidence that the defendant threatened Jones. Further, although the defendant inflicted four cuts on Jones's back, the lacerations were superficial and not life threatening. As Dr. Szczesniak testified, Jones's wounds were not deep. Contrary to the trial court's recollection of the evidence, Dr. Szczesniak never testified that Jones's "wounds could have resulted in death." As noted earlier, Dr. Szczesniak testified that it was possible that "the area in which Ms. Jones presented wounds could have resulted in her death." However, the doctor was quite clear in his testimony that the lacerations that Jones actually suffered turned out to be superficial and not life threatening. Finally, as Jones left the apartment, there was no evidence that the defendant attempted to pursue her or cause her any further injury.

¶ 17    There is no doubt that Jones suffered serious injuries at the hands of the defendant that have resulted in permanent scarring. However, not every assault involving serious bodily injury will necessarily support an inference that the assailant intended to kill the victim. *People v. Mitchell*, 105 Ill. 2d 1, 9 (1984); *People v. Jones*, 184 Ill. App. 3d 412, 429-30 (1989). Considering all of the circumstances, the character of the attack and the superficial nature of the injuries inflicted upon Jones, we believe that the evidence, when viewed in its light most favorable to the State, is insufficient to establish beyond a reasonable doubt that the defendant intended to kill Jones. As a consequence, his conviction of attempted first-degree murder cannot stand. See *Garrett*, 216 Ill. App. 3d at 353-54; *Jones*, 184 Ill. App. 3d at 429-31.

¶ 18    For these reasons, we: affirm the defendant's convictions of both counts of aggravated domestic battery and three counts of aggravated battery; reverse the defendant's conviction and sentence for attempted first-degree murder; and remand this cause to the trial court to resentence the defendant.

¶ 19    Affirmed in part and reversed in part; cause remanded with directions.