2021 IL App (1st) 190410-U

No. 1-19-0410

Order filed April 19, 2021

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 CR 12184 |
| | ) | |
| ROY WALKER, | ) | Honorable |
| | ) | Charles P. Burns, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE PIERCE delivered the judgment of the court.
Presiding Justice Walker and Justice Coghlan concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Defendant's conviction for aggravated battery of a peace officer is affirmed where the evidence was sufficient to establish intent.

¶ 2    Following a bench trial, defendant Roy Walker was convicted of aggravated battery of a

peace officer (720 ILCS 5/12-3.05(d)(4)(i) (West 2016)) and sentenced to seven years'

imprisonment. He appeals, alleging the evidence was insufficient to establish intent. We affirm.

¶ 3 Defendant was charged by indictment with three counts of aggravated battery of a peace officer (counts I-III) and one count of resisting or obstructing a peace officer (count IV) (720 ILCS 5/31-1(a-7) (West 2016)) following an incident on July 19, 2017.

¶ 4 At a proceeding on April 25, 2018, defense counsel asked that defendant be evaluated for sanity at the time of the offense. On October 4, 2018, Kristin Schoenbach, a licensed clinical psychologist, filed a letter with the trial court stating that based upon her evaluation, defendant was "legally sane" at the time of the offense.

¶ 5 At trial, Chicago police sergeant Thomas Surma testified that around 7 or 7:30 p.m. on July 19, 2017, he was in uniform near Millennium Park in Chicago with his partner Officer Walker when a citizen approached and complained of an "unruly or disruptive person."[1] Surma responded to the fountain area and saw defendant, whom Surma identified in court. Upon seeing Surma, defendant knelt, wrapped his fist with a metal wallet chain, made two fists, and took a fighting stance. Surma radioed for assistance, and additional police officers arrived. He initially intended to "call for a wagon and possibly take [defendant] for a psychological [evaluation]."

¶ 6 Eventually, the officers handcuffed defendant and called for an ambulance. He was sweating and his speech was incoherent, though Surma heard defendant say he was a violent man. As the officers escorted defendant to the sidewalk to await the ambulance, he dropped to the ground and wrapped his legs around Officer Walker's leg, requiring the officers to intervene. Officers placed defendant in an ambulance, and Surma and Officer Walker rode in back on the way to the hospital.

---

[1] Officer Walker's first name does not appear in the report of proceedings. Because defendant and Officer Walker share the same last name, we refer to Officer Walker using his title. Surma testified that he was an officer, not a sergeant, at the time of the incident.

¶ 7     When the ambulance arrived at Northwestern Hospital, a paramedic opened the back ambulance door, and Surma removed defendant's seatbelt. Defendant reached towards his back pocket, retrieved a bottle, and drank. Surma tried to take the bottle, and defendant splashed him with the contents, which smelled like alcohol. Defendant then stood, "chest-bumped" Surma, head-butted Surma "[v]ery violently," and a "scuffle began." Defendant's chest hit Surma's chest, and defendant's head hit Surma's nose. Surma fell to the ambulance floor, but tried to grab defendant so he could not escape. Hospital personnel then detained defendant. Surma injured his face and back during the incident, received treatment for pain in his neck and shoulder at the hospital, and missed work for approximately two months.

¶ 8     On cross-examination, Surma testified that he was concerned about defendant's mental health during the initial encounter. Defendant voluntarily put his wallet back in his pocket before officers handcuffed him. Surma clarified that defendant "tried" to drink while in the ambulance. Surma stayed at the hospital until 8 or 9 a.m. the next morning, and received over-the-counter pain medication and a back brace at discharge.

¶ 9     The State entered a stipulation that following the incident, doctors diagnosed Surma with a "chronic mildly displaced bilateral L-3 pars lumbar vertebrae fracture."

¶ 10    Christopher Wallace, a security team leader at Northwestern Hospital, testified that he witnessed the incident at the hospital. Wallace stood directly behind the ambulance as it arrived. When the doors opened, Wallace saw Surma remove defendant's seatbelt. Defendant then reached behind himself and retrieved a water bottle. Surma stopped defendant from drinking. Defendant said, "one more drink." He then stood, chest-bumped Surma, and head-butted him. Defendant's head-butt contacted Surma where his forehead met his nose. Surma fell with defendant on top of

him. Wallace and another security guard pulled defendant off Surma and, along with other officers and hospital personnel, brought defendant to the trauma bay. During this process, Wallace heard defendant swear, make threats, and say, "I'm going to get you."

¶ 11    Chicago police officer Miguel Martinez testified that he assisted Surma during the initial encounter with defendant and also followed the ambulance to the hospital. Upon arrival at the hospital, Martinez approached the ambulance, and was present when the incident occurred. Martinez wore a body camera that day, and the State published the footage to the court.

¶ 12    The footage, included in the record on appeal, depicts Martinez approach Millennium Park, where defendant is surrounded by other officers. A wallet chain is visible in defendant's hand and he makes fists, though moments later he allows officers to handcuff him. Defendant repeats, "I'm a violent man." Officers walk defendant to the sidewalk to await an ambulance. On the way, defendant drops to the ground and wraps his legs around the leg of an officer. The officers then shackle defendant's legs. Eventually, an ambulance arrives and takes defendant to the hospital. Martinez follows, and upon arrival, he approaches the parking lot where defendant is being removed from the ambulance. Moments later, there is commotion as defendant emerges from the back of the ambulance, though the events inside the ambulance are obscured because Martinez is standing behind another individual. As Martinez approaches, defendant can be heard saying, "get the f*** away from me," and someone can be seen falling to the floor inside the ambulance. Martinez, along with other officers and hospital personnel, detain defendant and bring him inside the hospital.

¶ 13    Defendant entered a stipulation that Dr. Nathan Gruegr would testify that he examined defendant on July 19, 2017, and diagnosed him with "excited delirium."

¶ 14    During closing arguments, defense counsel argued that defendant suffered a "mental health crisis" during the incident, and the State failed to prove defendant knowingly or intentionally harmed Surma. The court interjected, "What is excited delirium?" and, "There is no evidence of this so I don't know what it is." The State argued that defendant did not present a defense of "sanity" or "intoxication," the evidence suggested defendant had knowledge of his actions when he head-butted Surma, and Surma sustained bodily harm as a result.

¶ 15    The court found defendant not guilty on count III for aggravated battery of a peace officer and count IV for resisting or obstructing a peace officer, but guilty of counts I and II for aggravated battery of a peace officer. In so finding, the court rejected defendant's arguments regarding intoxication or "excited delirium," explaining that any argument regarding diminished capacity was irrelevant because Illinois does not recognize the defense. The court found that defendant knew Surma was a peace officer, head-butted him "purposely" when Surma tried to stop defendant from drinking, and in doing so, caused bodily harm to Surma.

¶ 16    At a later proceeding, the court denied defendant's motion for a new trial. The matter proceeded to sentencing, where the parties agreed defendant was subject to Class X sentencing. The court merged count II into count I and sentenced defendant to seven years' imprisonment on count I for aggravated battery of a peace officer. The court denied defendant's motion to reconsider sentence.

¶ 17    On appeal, defendant argues that the evidence was insufficient to establish that he acted knowingly or intentionally when physically contacting Surma, and instead showed the contact was accidental.

¶ 18     On sufficiency of the evidence review, the reviewing court construes the evidence in the light most favorable to the State and determines whether any rational factfinder could have found the defendant guilty beyond a reasonable doubt. *People v. Hardman*, 2017 IL 121453, ¶ 37. All reasonable inferences are drawn in favor of the State, and the reviewing court cannot substitute its judgment for that of the factfinder regarding the weight of the evidence or the credibility of the witnesses. *Id.* The factfinder's decision should not be reversed unless the evidence is "so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt." *People v. Gray*, 2017 IL 120958, ¶ 35.

¶ 19     Relevant here, the State was required to prove that defendant knowingly or intentionally caused bodily harm to Surma while knowing Surma was a peace officer, and that Surma was performing official duties. 720 ILCS 5/12-3.05(d)(4)(i) (West 2016); see also 720 ILCS 5/12-3(a) (West 2016) ("A person commits battery if he or she knowingly without legal justification *** causes bodily harm to an individual.").

¶ 20     Defendant challenges the sufficiency of the State's evidence regarding his intent to harm. It is generally accepted that "[r]egardless of whether one calls battery a specific intent crime or a general intent crime *** the criminality of a defendant's conduct depends on whether he acted knowingly or intentionally, or whether his conduct was accidental." (Internal quotation marks omitted.) *People v. Phillips*, 392 Ill. App. 3d 243, 258 (2009). Where a defendant disputes intent, the State can prove this element using circumstantial evidence. *Id.* at 259. The defendant's intent is an issue of fact for the factfinder to determine. *People v. Brown*, 2015 IL App (1st) 131873, ¶ 14.

¶ 21    Here, the record showed that Surma, while in uniform, encountered defendant in Millennium Park, at which time defendant adopted an aggressive posture and repeated, "I'm a violent man." Surma and other officers eventually handcuffed defendant and placed him in the back of an ambulance, which drove him to Northwestern Hospital. Upon arrival at the hospital, Surma removed defendant's seatbelt. Defendant then retrieved a bottle containing an unknown liquid from his back pocket. Surma attempted to take the bottle from defendant, who said "one more drink," then stood up, chest-bumped Surma, and head-butted Surma. Defendant's forehead contacted Surma's nose, which caused Surma to fall to the floor. At this point, hospital personnel and other officers subdued defendant, who was swearing and making threats. Surma sustained injuries to his back, neck, and shoulder, was treated in the hospital, and missed two months of work.

¶ 22    On this record, we hold that a rational factfinder could have found that defendant acted knowingly or intentionally in causing bodily harm to Surma, and did not act accidentally. Surma and Wallace both testified that immediately after Surma tried to take defendant's bottle, defendant head-butted Surma. Surma described the act as violent. Wallace testified that defendant said, "one more drink" prior to the act. Based on this evidence, a rational factfinder could find that defendant was upset that Surma tried to take the bottle, and aggressively head-butted Surma in response, an act defendant knew would likely harm Surma.

¶ 23    Defendant argues that the contact was accidental because the evidence suggested he was either intoxicated, having a mental health disturbance, or both. This argument fails for two reasons. First, as the trial court noted, diminished capacity is not a defense in Illinois. See *People v. Frazier*, 2019 IL App (1st) 172250, ¶ 35. Furthermore, no evidence established defendant's alleged

intoxication or mental health status, the "excited delirium" diagnosis was left unexplained, and defendant did not present an affirmative defense of intoxication or insanity. Second, to the extent defendant argues the court did not correctly weigh the evidence, this argument is untenable because on sufficiency of the evidence review we cannot substitute our judgment for that of the factfinder regarding the weight due any particular evidence or testimony. *Hardman*, 2017 IL 121453, ¶ 37. While other reasonable inferences might have been possible, a rational factfinder could have credited Surma and Wallace to believe defendant's physical contact was intentional or knowing, particularly considering defendant's aggressive conduct before and after the incident in the ambulance. See *People v. Wheeler*, 226 Ill. 2d 92, 117 (2007) (on sufficiency of the evidence review, the reviewing court "is not required to search out all possible explanations consistent with innocence").

¶ 24 Finally, defendant argues the contact was accidental because he intended to retrieve his bottle, not to cause injury, and the fact that he was shackled and in a confined space suggests the contact resulted because his balance was compromised. This argument fails because the record supports the inference that the head-butt was a purposeful act and not the result of a loss of balance, and we must draw all reasonable inferences in favor of the State. *Hardman*, 2017 IL 121453, ¶ 37.

¶ 25 For the foregoing reasons, defendant's conviction is affirmed.

¶ 26 Affirmed.