2021 IL App (1st) 191245-U

No. 1-19-1245

Order filed May 19, 2021

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 18 CR 4953 |
| | ) | |
| BRUCE KELLY, | ) | Honorable |
| | ) | Kenneth J. Wadas, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE McBRIDE delivered the judgment of the court.
Justices Ellis and Burke concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Defendant's conviction of criminal trespass to a vehicle is affirmed, where the circumstantial evidence showed that defendant knowingly entered a stolen vehicle.

¶ 2    Following a jury trial, defendant Bruce Kelly was convicted of criminal trespass to a vehicle and possession of a controlled substance and sentenced to concurrent sentences of 364 days in the Cook County Department of Corrections and 3 years in prison, respectively. On appeal, defendant argues that the State failed to prove him guilty beyond a reasonable doubt of criminal

trespass to a vehicle, where the trial evidence did not establish he had actual knowledge that the vehicle he entered was stolen. We affirm.

¶ 3      Defendant was charged by indictment with one count of possession of a stolen motor vehicle (625 ILCS 5/4-103(a)(1) (West 2016)) and one count of possession of a controlled substance (720 ILCS 570/402(c) (West 2018)), following an incident in Chicago on March 18, 2018.

¶ 4      At trial, Latanya Obaner testified that in March 2018, she owned a 2008 silver Chevrolet Malibu and parked it across the street from her house every day that month. Three months prior, the tip of the Malibu's key had broken off inside the ignition. Obaner could start the Malibu's engine using the top part of the key, which she kept inside a closed compartment in the Malibu's armrest when she parked on the street.

¶ 5      On March 14, 2018, Obaner parked the Malibu across the street from her house and left the broken key inside the armrest. When she woke up the next day, the Malibu was missing. Obaner called the police and reported the Malibu stolen. A few days later, she received a call from police, went to the police station, and identified and picked up her vehicle. The Malibu was missing a phone mount and contained an unfamiliar "bookbag full of male belongings." Obaner denied that she gave anyone permission to drive her Malibu in March 2018, and she did not know anyone named Bruce Kelly, Raynal Harris, or Lewanda Anderson. The State entered into evidence Obaner's certified title to the Malibu, a photograph of the Malibu in March 2018, and a photograph of the Malibu's interior driver's seat area, in which the broken top key part could be seen on the floor.

¶ 6    On cross-examination, Obaner denied that when she reported the Malibu stolen, she told the police that there were no keys in the vehicle and the doors were locked. When Obaner recovered the Malibu, she did not tell the police officers her phone mount was stolen. She could not recall the exact date on which she reported the stolen Malibu. On redirect examination, Obaner denied knowing anyone who lived on the 4500 block of South Drexel Road. She testified that she reported the stolen Malibu "as soon as [she] noticed that [her] vehicle was missing."

¶ 7    Chicago police officer Francisco Moya testified that on March 18, 2018, at about 2:30 a.m., he and his partner Officer Hemza Shaibi were on duty. Both officers wore body cameras, and they drove a marked vehicle with a camera. On the 4500 block of South Drexel, Moya saw a parked Malibu blocking an alley. Moya and Shaibi ran the Malibu's license plate through a computer and learned that the vehicle was stolen. Using a microphone on his uniform, Moya also contacted the dispatcher to verify that the vehicle was stolen.

¶ 8    At that point, the alley was dark, and Moya believed the Malibu was empty. One of the officers turned on the police vehicle's spotlight and, without any directions from Moya, defendant exited the driver's seat and Harris exited the passenger's seat. Moya identified defendant in court. Moya and Shaibi arrested defendant. Moya asked defendant who owned the Malibu and where the keys were, and defendant stated the keys were in the ignition. Moya patted defendant down and found a small, clear Ziploc bag in his inner jean pocket containing a white substance that Moya suspected was heroin. Moya inventoried the Ziploc bag and its contents when he returned to the police station. The State entered into evidence a photograph taken by Moya's body camera, which showed Moya's right hand holding a Ziploc bag.

¶ 9     The State also published to the jury video clips from Moya's body camera. Moya testified that the footage was a clear and accurate recording of defendant's arrest. Moya stated that the first clip depicted defendant, as well as Moya leaning into the Malibu and half of a broken key on the floor of the Malibu's interior. Moya confirmed that he used the key half to drive the Malibu to the police station.

¶ 10     Our review of the video evidence shows a key half on the floor of the vehicle in front of the driver's seat.[1] The man identified as defendant is seen handcuffed facing a police vehicle. Moya asks defendant, "Whose car is this?" Defendant responds, "Uh, Robert Gray, uh, it's his girlfriend's car." Then, Moya asks who has the keys, and defendant states, "The door is open." Moya asks who has the keys again, and defendant states, "I'm waiting on Robert, man." Moya then asks where Robert is, and defendant responds, "He's upstairs in, uh, his girlfriend's place up on the third floor." The two wait outside and Moya receives a call stating that the Malibu is stolen. Defendant groans and states, "Get the f*** out of here." Moya then searches defendant's pockets, pulls out a bag, and asks defendant what it is and if it is heroin. Defendant groans and does not answer. Moya asks if he has any more heroin on him, and defendant states, "No, man." The footage in the record also reflects that when asked again where Robert was, defendant stated, "He went upstairs, see he went through that gate *** and he's supposedly going over to his girl's house, man, he's grabbing something from her, he's going to *** his club house and get my clothes."

¶ 11     Moya testified that he and Shaibi were in the area of the alley for about 20 to 30 minutes, and neither a person named "Robert" nor Robert's girlfriend arrived. Moya testified that in the

_____

[1] It is not clear from the report of proceedings which of the video footage clips included in the record on appeal was played for the jury. We have reviewed all the clips submitted as part of the exhibits in the record on appeal.

second piece of footage from his body camera, he can be heard yelling, "Robert," to "see if Robert would come out."

¶ 12    On cross-examination, Moya confirmed that in the video, defendant did not state that the Malibu's key was in the ignition, but rather stated that the door was open and defendant was waiting for Robert. Moya asked defendant where the Malibu's keys were multiple times. Moya confirmed that, based on the video, defendant answered, "I don't know. He had them. He was going to take me to go get my stuff."[2] Additionally, Moya confirmed that he asked why defendant was in the driver's seat, and defendant responded, "I was sitting in there waiting on him, man, he is supposed to be taking me to get my clothes." Moya also confirmed that defendant told him the Malibu belonged to Robert Gray's girlfriend.

¶ 13    Moya further confirmed that, when he checked the Malibu's license plate with the dispatcher that night, he learned that the stolen Malibu was reported on March 16, 2018. Two other police officers, a police sergeant, and multiple other police vehicles, including a patrol wagon, arrived at the alley on the night of the arrest. Moya testified that he never called an evidence technician to take photographs because the alley was not a crime scene. He did not attempt to locate "Robert" or his girlfriend in any way other than calling Robert's name. The Malibu key was not examined for fingerprints or DNA, but defendant confirmed that his property was found inside the vehicle. Moya stated that he "believe[d]" the bookbag found inside the vehicle belonged to Harris.

¶ 14    On redirect examination, Moya confirmed that, before he met with Obaner, multiple cellphones, Oreo cookies, and "some papers" were inventoried as personal property and returned

_____

[2] This statement from defendant is not in the video clips included in the record on appeal.

to defendant and Harris. Defendant and Harris directed Moya as to which items belonged to them. An evidence technician was not called to the alley because the victim was not present and the Malibu was not stolen "in a violent fashion." Moya also confirmed that, had he inventoried the Malibu's key or the Malibu for DNA or fingerprint testing, Obaner would not have been able to recover her vehicle when she did.

¶ 15    Shaibi's testimony was consistent with Moya's testimony. Shaibi added that, after defendant and Harris exited the Malibu without being told by the officers to do so, Moya and Shaibi exited their police vehicle, told defendant and Harris to "stop right there," and handcuffed defendant and Harris. The State published another clip from Shaibi's body camera, which Shaibi confirmed was a clear and accurate depiction of defendant's arrest. Shaibi testified that in the video, defendant said "something about $20" to Harris.

¶ 16    On cross-examination, Shaibi confirmed that defendant never said he knew the Malibu was stolen, and defendant "kept saying Robert." Shaibi described a body camera video clip published to the jury, in which someone yelled "Robert," and defendant turned his head "a little bit" toward a building.

¶ 17    Chicago police forensic scientist Naeemah Powell[3] testified that on March 29, 2018, she examined the inventoried Ziploc bag containing the powdered substance and confirmed that the substance contained fentanyl.

¶ 18    The defense called Anderson, who testified that defendant is the father of her oldest child. On March 17, 2018, Anderson had a gathering at her house to celebrate Anderson's birthday.

---

[3] While the record alternately spells Powell's first name as "Naeemah" and "Naaemah," the parties do not dispute these names refer to the same person.

Defendant and Harris were dropped off at her house around 9:30 or 10 p.m. At about 1:30 or 2 a.m., Anderson drove defendant and Harris to the corner of 45th Street and Drexel, and defendant asked Anderson to drive into an alley. Anderson complied and saw a gray vehicle in the alley. Defendant then asked Anderson if he could borrow $100, and Anderson gave him five $20 bills. Defendant and Harris exited Anderson's vehicle, and defendant walked to the gray vehicle, which was occupied by a man and a woman. Defendant called the man "Rob or something" and gave him a $20 bill, and the man and woman exited the vehicle and walked towards a nearby apartment building. Defendant then returned to Anderson's vehicle, kissed Anderson, and told her "good-bye." Anderson drove back home. Anderson did not see where Harris went after Harris exited her vehicle.

¶ 19    On cross-examination, Anderson stated she drove away while defendant was standing outside the gray vehicle, so she did not know if defendant entered the vehicle's driver's seat. She confirmed that on March 27, 2018, she spoke to an investigator for the state's attorney's office but did not provide any of the information she testified to at trial. She also denied that she saw the man in the gray vehicle give defendant anything in exchange for the $20 bill.

¶ 20    The State called Shaibi to testify in rebuttal. The State published an additional piece of body camera footage. Shaibi confirmed that, in the video, he asked defendant who owned the vehicle after defendant said, "[A]ll this over $20."

¶ 21    In closing, defendant argued he was not guilty of possession of a stolen motor vehicle as the Malibu belonged to Robert's girlfriend, Robert and his girlfriend were inside a nearby apartment building, and defendant was waiting for Robert when police arrived. The body camera recording showed defendant was "surprised" when police told him the Malibu was stolen. He did

not know where the keys were as Robert had them, and could not see the key on the floor as it was dark in the vehicle. The video showed him lamenting to Harris that he "paid Robert $20 for the ride he clearly wasn't getting now." Defendant argued Robert had stolen the vehicle or knew it was stolen, and thus did not appear on the scene because of the extensive police presence. Defendant argued police made no attempt to determine the truth as to what happened, such as by canvassing the apartment building where Robert lived or testing the key for fingerprints or DNA.

¶ 22 The jury was instructed on possession of a controlled substance, possession of a stolen motor vehicle, and criminal trespass to a vehicle. It found defendant guilty of criminal trespass to a vehicle and possession of a controlled substance. The trial court denied defendant's posttrial motion and sentenced him to concurrent sentences of 364 days in the Cook County Department of Corrections for criminal trespass to a vehicle, time considered served, and 3 years in prison for possession of a controlled substance.

¶ 23 On appeal, defendant argues that the State failed to prove him guilty beyond a reasonable doubt of criminal trespass to a vehicle, where the trial evidence was not sufficient to show that he knew the Malibu he entered was stolen. The State responds that circumstantial evidence showed defendant knew the Malibu was stolen, including the evidence that the vehicle was parked blocking an alley, defendant exited as soon as the police officers turned on their spotlights, defendant evaded questions regarding the Malibu's key, and the key was found on the floorboard where defendant was sitting.

¶ 24 Under the due process clause of the fourteenth amendment to the United States Constitution, "a person may not be convicted in state court 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.' " *People v.*

*Cunningham*, 212 Ill. 2d 274, 278 (2004) (quoting *In re Winship*, 397 U.S. 358, 364 (1970)). The inquiry on a challenge to the sufficiency of the evidence is " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Cooper*, 194 Ill. 2d 419, 430-31 (2000) (quoting *Jackson v. Virginia*, 433 U.S. 307, 319 (1979)).

¶ 25    It is not the reviewing court's function to retry the defendant when considering a challenge to the sufficiency of the evidence at trial. *People v. Nere*, 2018 IL 122566, ¶ 69. Rather, "[i]t is the responsibility of the trier of fact to determine the credibility of witnesses, to weigh their testimony, to resolve conflicts in the evidence, and to draw reasonable inferences from the evidence." *People v. Williams*, 193 Ill. 2d 306, 338 (2000). The trier of fact need not "disregard inferences which flow normally from the evidence before it," or "search out all possible explanations consistent with innocence, and raise those explanations to a level of reasonable doubt." *In re Jonathon C.B.*, 2011 IL 107750, ¶ 60. We "must allow all reasonable inferences from the record in favor of the prosecution" (*People v. Givens*, 237 Ill. 2d 311, 334 (2010)), and will not reverse a conviction unless the evidence is "so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt" (*People v. Bradford*, 2016 IL 118674, ¶ 12).

¶ 26    Section 21-2(a) of the Criminal Code of 2012 (Code) (720 ILCS 5/21-2(a) (West 2018)) provides that "[a] person commits criminal trespass to vehicles when he or she knowingly and without authority enters any part of or operates any vehicle." "The gravamen of the charge is a knowing entry of a vehicle of another without authority." *People v. Barnes*, 48 Ill. App. 3d 226, 228 (1977). "A defendant's knowledge is generally established by circumstantial evidence rather than direct proof." *People v. Castillo*, 2018 IL App (1st) 153147, ¶ 26.

¶ 27    "[C]ircumstantial evidence is sufficient to sustain a criminal conviction, so long as the elements of the crime have been proven beyond a reasonable doubt." *People v. Milka*, 211 Ill. 2d 150, 178 (2004). "Innocent entry into a vehicle not knowing it was stolen is not an offense." *People v. Posey*, 83 Ill. App. 3d 885, 888 (1980). However, "the recent, exclusive and unexplained possession of a stolen auto by an accused gives rise to an inference of guilt of criminal trespass to a vehicle, absent other facts and circumstances." *Id.* at 889.

¶ 28    Taking the evidence in the light most favorable to the State as we must, we find a rational trier of fact could have found defendant guilty of criminal trespass to a vehicle beyond a reasonable doubt. The evidence at trial showed that Obaner's parked Malibu was stolen and, a few days later, the stolen vehicle was found in defendant's possession. Obaner testified she had not given anyone permission to use her vehicle. Police found it blocking an alley with defendant in the driver's seat. When the officers illuminated the vehicle, defendant exited without being asked, as did his passenger. See *Barnes*, 48 Ill. App. 3d at 229 (finding the evidence was sufficient to establish the defendant's guilt of criminal trespass to a vehicle, where the defendant was driving the vehicle and attempted to flee from the vehicle with other occupants).

¶ 29    Defendant was asked repeatedly where the Malibu's key was, but avoided answering the question, repeatedly stating that he was waiting for "Robert" and the Malibu belonged to "Robert's" girlfriend, and ultimately stating he did not know where the keys were and "[h]e [Robert] had them." Yet the Malibu's broken key, the part necessary to start and drive the vehicle, was found on the driver's side floor of the Malibu where defendant was sitting. Defendant's possession of the stolen Malibu, taken with his immediate departure from the Malibu upon the arrival of the police officers, his reluctance to state the key's location to officers, and the key's

lying on the floor in plain sight where defendant was sitting are circumstantial evidence supporting a reasonable inference that defendant knowingly entered the Malibu without consent of its owner. *Castillo*, 2018 IL App (1st) 153147, ¶ 26 (knowledge is generally established through circumstantial evidence); *Posey*, 83 Ill. App. 3d at 889 ("the recent, exclusive and unexplained possession of a stolen auto by an accused gives rise to an inference of guilt of criminal trespass to a vehicle, absent other facts and circumstances").

¶ 30    Defendant asserts the evidence showed he did not know the Malibu was stolen, where he told police officers that the Malibu belonged to Robert's girlfriend and he was in the car waiting for Robert to give him a ride. Defendant further asserts it is not surprising that Robert and his girlfriend never appeared on the night of defendant's arrest, given the "significant police presence in the area."

¶ 31    As an initial matter, the State did not need to prove defendant knew the vehicle was stolen; knowledge that a vehicle is stolen is not an element of the criminal trespass to a vehicle offense. See 720 ILCS5/21-2 (West 2018) ("A person commits criminal trespass to vehicles when he or she knowingly and without authority enters any part of or operates any vehicle"). Further, defendant's knowledge was a question of fact to be determined by the jury, and the jury was not required to accept the defense's version of the events. See *People v. Jacobs*, 2016 IL App (1st) 133881, ¶¶ 53-56 (where the defense presented a theory that the defendant had rented a stolen vehicle from an acquaintance not knowing the vehicle was stolen, the trier of fact was not "required to accept the defendant's version of the facts," and the evidence was sufficient to show that the defendant knowingly possessed a stolen vehicle).

¶ 32    The mere fact that defendant told police the Malibu belonged to an acquaintance did not raise a reasonable doubt as to his guilt. See *People v. Lyones*, 72 Ill. App. 3d 780, 782-83 (1979) (finding the evidence was sufficient to show the defendant knowingly entered a stolen vehicle, where the defendant told a police officer that " 'Mr. Jackson, a friend' " gave the defendant the vehicle). Defendant made the same arguments to the jury as he now raises on appeal, and essentially asks that we reweigh the evidence and substitute our judgment for that of the jury. This we cannot not do. *People v. Hardman*, 2017 IL 121453, ¶ 37. We do not find the evidence so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of defendant's guilt. Accordingly, the evidence at trial was sufficient to support defendant's conviction for criminal trespass to a vehicle.

¶ 33    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 34    Affirmed.